## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AARON D. YOUNKER,                                    Case No. 1:10-cv-875
      Petitioner,

                                                   Dlott, J.
      vs                                       Bowman, M.J.


WARDEN, CHILLICOTHE                          **REPORT AND**
CORRECTIONAL INSTITUTION,                    **RECOMMENDATION**
      Respondent.


Petitioner, a prisoner in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the Court on the petition, respondent's return of writ with exhibits, and petitioner's reply to the return of writ. (Docs. 2, 20, 21).[1]

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On May 2, 2006, the Highland County, Ohio, grand jury returned an indictment charging petitioner with one count of rape of a seven-year-old minor in violation of Ohio Rev. Code § 2907.02(A)(1)(b), after petitioner's arrest in March 2006 on a complaint of rape. (Doc. 20, Ex. 1 & Ex. 48, p. 1). On October 3, 2007, petitioner entered a no-contest plea to a reduced charge of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(1), which was accepted by the trial court; in accordance with the parties' plea agreement, petitioner was classified as "a sexually oriented offender" and sentenced the same date to an agreed-to prison term of seven (7) years. (Doc.

---

[1]Petitioner also has filed numerous non-dispositive motions in this action, including a motion for appointment of counsel and motions to stay the proceeding pending the appointment of counsel. (*See* Docs. 9, 10, 12, 13, 16, 17, 22). In a separate Order issued this date, the undersigned has denied those motions as moot.

20, Exs. 43-44).

In its direct appeal decision, the Ohio Court of Appeals, Fourth Appellate District, provided the following chronology of events that occurred in the criminal proceedings between the time of petitioner's indictment in May 2006 and his conviction and sentence in October 2007:[2]

> On May 22, 2006, Younker filed a request for discovery and a demand for a bill of particulars.  On May 23, 2006, plaintiff-appellee ("the State") answered Younker's discovery request and filed its own request for discovery.  The State complied with Younker's demand for a bill of particulars on June 5, 2006.  Younker answered the State's discovery request on June 7, 2006.

> On June 7, 2006, Younker also filed a motion for leave to file a motion to suppress. The court granted Younker leave to file a motion to suppress by June 30, 2006.  He did not.  Younker filed a second motion for leave on August 30, 2006.  The court also granted that motion.  Younker ultimately filed his motion to suppress on September 5, 2006.  The court held the suppression hearing on May 23, 2007.  The parties then filed post hearing briefs, and the court denied the motion to suppress on June 15, 2007.

> While the motion to suppress remained pending, Younker filed several motions that delayed proceedings on his case.  Younker requested continuances of the trial date on two occasions.  Due to motions to withdraw and pro se requests for new counsel, Younker changed attorneys three times during this period.  In addition, on September 26, 2006, Younker changed his plea to not guilty by reason of insanity and requested an evaluation of his competency to stand trial.  The court did not find Younker competent to stand trial until February 6, 2007.  From the record, it appears that the trial court initially held a competency hearing in November or December of 2006 and found Younker competent.  We did not receive a transcript of this hearing, and the court did not journalize its findings.  However, on December 8, 2006, the court granted Younker's oral motion for a second evaluation.  The court held the competency hearing on February 6, 2007.

> On June 4, 2007, before the court issued its decision on the suppression motion, Younker's fourth attorney filed a motion to withdraw based on Younker's repeated requests for a new attorney.  Younker filed a pro se motion requesting new counsel

---

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir.), *cert. denied,* 543 U.S. 892 (2004).

on June 15, 2007, the day the trial court denied his motion to suppress.  On June 18, 2007, the court granted these motions and appointed Younker's fifth attorney.

On June 18, 2007, the trial court also filed an entry granting another continuance of the jury trial.  According to the entry, the court continued the jury trial from June 18, 2007 to October 4, 2007, at the defendant's request.  Both Younker and his fifth attorney signed that entry.  Between June 18, 2007 and October 4, 2007, Younker filed other requests, such as another request for discovery.

At a hearing on October 3, 2007, the trial court heard argument on a pro se motion to dismiss on speedy trial grounds that Younker filed on May 14, 2007.  The court denied the motion.  Younker then entered a no contest plea to an amended charge of sexual battery in violation of R.C. 2907.03(A)(1), a felony of the second degree.

(Doc. 20, Ex. 48, pp. 1-3).

## Direct Review Proceedings

Petitioner's trial counsel filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals, Fourth Appellate District.  (Doc. 20, Ex. 45).  With assistance of new counsel for appeal purposes, petitioner filed an appellate brief raising the following claim as the sole assignment of error:

## ASSIGNMENT OF ERROR

The trial court erred to the prejudice of the defendant-appellant in overruling his motion to dismiss in which he alleged that the State had failed to bring him to trial within the time limits set forth in R.C. 2945.71-.73.

## ISSUE PRESENTED FOR REVIEW

When a criminal defendant presents a prima facie case that the speedy trial limits established in R.C. 2945.71 have been violated, the State bears the burden of rebutting the matter and the case must be dimissed when the State fails to do so.

(Doc. 20, Ex. 46).

On December 16, 2008, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment.  (Doc. 20, Ex. 48).

3

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court, challenging the appellate court's ruling on the speedy trial claim.  (Doc. 20, Ex. 49).  On June 3, 2009, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 20, Ex. 50).  Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which denied the application on March 1, 2010.  (*See* Doc. 20, Ex. 51).

### Motion To Withdraw No-Contest Plea

On March 4, 2008, during the pendency of his appeal to the Ohio Court of Appeals, petitioner filed a *pro se* motion with the trial court, requesting to withdraw his no-contest plea. (Doc. 20, Ex. 52).  In the motion, petitioner claimed that withdrawal of the plea was necessary "to correct manifest injustice" because three of his trial attorneys provided ineffective assistance. (Doc. 20, Ex. 52).  On March 12, 2008, the trial court denied the motion on the ground that it lacked jurisdiction to consider the motion while petitioner's case was pending before the Ohio Court of Appeals.  (Doc. 20, Ex. 53).  Petitioner apparently did not pursue an appeal in the state courts from that ruling.

### State Post-Conviction Proceedings

On November 25, 2008, during the pendency of his appeal to the Ohio Court of Appeals, petitioner also filed a petition for post-conviction relief with the trial court, alleging the following claims of error:

"a.  conviction obtained by Judge, prosecutor and Defendant's Attorneys by Intimidation.

b.  conviction obtained by coercive confession.

c.  conviction obtained by Chief Brandon Wooten of Lynchburg City Police

4

Department, Josh Smith of Highland County Childrens Services, James Slusher State Highway Patrol of Hamilton, OH., committing perjury.

d.  conviction obtained by all five of defendant's attorneys grossly misrepresented by all counsel.

e.  conviction obtained by unlawful restraint by Wooten, Smith and Slusher.

f.  conviction obtained by Chief Wooten and Josh Smith by hindering material witnesses and witnesses of alibi.

g.  conviction obtained by diligence of Judge Crush by not letting the defendant have the attorney of his choice.

h.  conviction obtained by Sham Legal Process.

i.  conviction obtained by obstruction of justice.

j.  conviction obtained by pattern of corrupt activity.

k.  conviction obtained by interfering with civil rights.

l.  conviction obtained by coun[s]els' conspiracy to destroy their client's case.

m.  conviction obtained by invol[u]ntary plea of no contest.

n.  conviction obtained by Judge Crush letting co-counsel close the hearing to sup[p]ress, knowing the defendant had material witnesses and witnesses to prove alibi and also knowing, that the defendant was appointed to represent himself. Jerry McHenry closed the hearing without the defendant's permission, and Mr. McHenry had no legal right to close the hearing."

(Doc. 20, Ex. 54).

On December 15, 2008, the trial court dismissed the post-conviction petition on the ground that it lacked jurisdiction "to consider any issues relating to said conviction" given that petitioner's direct appeal was then still pending before Ohio Court of Appeals.  (Doc. 20, Ex. 56).  Respondent states that petitioner did not pursue an appeal from that ruling in the state courts.  (Doc. 20, Brief, p. 6).

5

Nearly five months later, on May 11, 2009, petitioner filed a second *pro se* petition for post-conviction relief with the trial court, raising the same claims of error that had been presented in his previous petition.  (Doc. 20, Ex. 57).  On May 15, 2009, the trial court dismissed the petition on the ground that it was not filed in a timely manner "within 180 days of the date of the filing with the court of appeals of the transcript of the proceedings in the case," or by the deadline date of July 10, 2008, as required by Ohio Rev. Code § 2953. 21(A)(2).  (Doc. 20, Ex. 58).

On June 18, 2009, petitioner filed a *pro se* notice of appeal to the Ohio Court of Appeals, Fourth Appellate District.  (Doc. 20, Ex. 59).  On September 17, 2009, the appellate court issued an order directing petitioner to file a memorandum addressing whether the court had jurisdiction to consider the matter given that he had  "filed the notice of appeal more than 30 days after the trial court entered judgment."  (Doc. 20, Ex. 60).  In the order, petitioner also was advised that his failure "to file a memorandum directed to the jurisdictional issues within 10 days of the filing of this entry . . . **MAY RESULT IN THE DISMISSAL OF THIS APPEAL**."  (Doc. 20, Ex. 60) (emphasis in original).  Petitioner subsequently requested an extension of time to file the jurisdictional memorandum, which was granted; however, in granting the extension motion and setting a new deadline date of October 12, 2009, the state appellate court warned that "**NO FURTHER EXTENSIONS WILL BE GRANTED**" and that "**THE FAILURE TO FILE THE JURISDICTIONAL MEMORANDUM WILL RESULT IN THE DISMISSAL OF THIS APPEAL**." (Doc. 20, Exs. 61-62) (emphasis in original).

On Ocober 19, 2009, the Ohio Court of Appeals issued another order noting that petitioner had "failed to comply with the local rules of court to perfect this appeal as previously

notified by the Clerk of Courts" and ordering that the appeal be dismissed "within 10 days of the filing of this entry unless appellant shows good cause to the contrary."  (Doc. 20, Ex. 63).  On November 9, 2009, the court issued a Decision and Judgment Entry *sua sponte* dismissing the appeal "for appellant's failure to comply with an order of this court and for his failure to prosecute this case" because petitioner had yet to respond to the October 19, 2009 order.  (Doc. 20, Ex. 64).  Apparently, petitioner did not pursue an appeal from that ruling to the Ohio Supreme Court.

**Federal Habeas Corpus**

Petitioner filed the instant federal habeas corpus petition in December 2010.  (Doc. 2).  The case initially was filed with the Southern District of Ohio, Eastern Division, and was transferred to this Court for all further proceedings on December 10, 2010.  (Doc. 3).  In the petition, petitioner alleges nine grounds for relief, which are quoted verbatim herein:[3]

> **Ground One (First Amendment Violation):**  Congress shall make no law respecting on establishment of religion, or prohibiting the free exercise thereof; or abri[d]ging the freedom of speech, or the press; Or the right to the people peaceably to assemble; And to petition the government for redress of grievance.
>
> **Supporting Facts:**   The violation of the Writ of Habeas Corpus shall not be suspended.  USC Artic[le] I Section 9.2; Violation of the bills of Attainers and Ex-Post-Facto laws USC Artic[le] I 9.3 violations by the State of Ohio bill of attainers Ex-Post-Facto and equity arising under the Constitution between a State or the Citizens thereof USC Artic[le] III.
>
> **Ground Two (Fourth Amendment Violation):**  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by oath of the affi[r]mation, and particula[r]ly describing the place to be searched, and the persons or things to be seized.
> 1. The defendant has the right to be secure in his persons, and

---

[3]It is noted that the undersigned has made a few revisions in the quoted text to correct some minor typographical and grammatical errors contained in the petition.

effects against searches and seizures without probable cause,
supported b[y] oath and affidavits describing the persons or things
to be seized.
2.  The defendant is secure against his persons, effects and against
se[a]rches and seizures without probable cause, supported by oath
and affidavits describing the persons or things to be seized.
3.  The defendant/Guardian Ad Lit[e]m is secure against his
children and effects against searches and seizures, or placed within
danger to obtain coerced confession.
4.  The defendant has the right to be secure in his persons effects
against unreasonable sea[r]ches and seizures, unless warrants
issued under probable cause and supported by affidavits and oaths
describing the person or things to be seized, and the right to be
brought before the Gran[d] Jury.

**Ground Three (Fifth Amendment Violation):**  No person shall be held to
answer for a capital, or otherwise infamous crime, unless on a presentment or
indictment of th[e] Grand Jury, except in cases arising in the land or nav[a]l
forces or in the militia, when in actual service in time of war or public danger, nor
shall any person be su[b]ject for the same offen[s]e to be twice put in jeopardy of
life or limb; nor shall be compelled in any criminal case to be witness against
himself; nor be deprived of life[,] liberty, [o]r property, without due process of
law; nor shall private property be taken for public use, without just compensation.

**Supporting Facts:**
1.  error.  At the patrol station Slusher repea[te]dly told the defendant that he was
not under arrest.  After defendant t[ermi]nated the polygraph test.  Defendant told
Slusher he was leaving.  Slusher go got jump up and block the door and would not
let defendant pass to leave.
2.  error.  Was when defendant told Slusher he'd confess if he could go home and
check on his son[]s, knowing[] that one you[n]gest son is handicapp[ed] that
could very well be in danger.  Slusher came back and agreed to the deal.
3.  error.  Then Slusher put words in the mouth of[] defendant then told the
defendant he said them.
4.  error.  Was Slusher was telling the defendant what to write and sign the
confession.

**Ground Four (Sixth Amendment Violation):**  In all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial, by an impartial jury of
the State and district wherein the crime shall have been committed, which shall
have been previously ascertained by law, and to be informed of the nature and
cause of the accusation; to be confronted with the witnesses against him; to have
compulsory process for obtaining witnesses in his favor and to have assistance of
counsel for his defen[s]e.

1.  The court does not have the jurisdiction pursuant to the Six[th] Amendment to be bias[ed].

2.  The Defendant has the right to be represented by compe[]tent counsel.

3.  The Defendant has a right to obtain evidence, material and witnesses in his favor.

4.  The court must produce the witnesses against the defendant.

5.  The court[']s jurisdiction must be ascertained prior to the commencement of the action and pursuant to Statu[t]es of the State.

6.  The Defendant has the right to an Impartial jury, hearings and proceedings before the court.

7.  The Defendant has a right to a speedy and public trial without, trial judge Bias.

8.  The Defendant with counsel and by self is the proper Defen[s]e of rights.

9.  The Defendant has the privileges and im[m]unitie[s] of ORC 2901.13 Limitations upon prosecutions and Limitations upon time during trial process.

10.  The Defendant/Appellant has the right t[o] preserve his ev[i]d[e]nce, witnesses and other things for appeal process.

11.  The Defendant has the right for effective assistance of counsel to obtain favorable evidence and witnesses.

12.  The Defendant has the right for effective assistance of counsel to produce Affidavits, Depositions and testimony favorable to him.

**Supporting Facts:**

1.  error was on 2/26/07 and 4/[04]/07 judge Crush told the defendant that the Ohio RC time sta[tut]e rules does not apply to him and again den[y]ing the sta[t]u[t]e at sentencing.

2.  error was on 5/14/07 Pro Se motion con[c]erning jury trial Crush told the Defendant that it was alright for the jury to run in and out and through the courthouse wh[ile] th[e]y were delib[e]rating his fate.

3.  error was at the same hearing.  Crush told the Defendant that it was alright for the prosecuto[r] to be in the deliberating room wh[ile] the jury was deliberating his fate.

4.  error was the hearing to sup[p]ress held on 5/02/07.  Crush stated that the Defendant was representing him self, but then let Ohio public defender JERRY Mc[H]enry close that hearing.

5.  error was Crush denied Defendant a compe[]t[e]nt counsel that would get witnesses and evidence, and othe[]r evidence.

6.  error Crush and the Prosecutor [k]new the Defendant had Material and Alibi witnesses, and other evidence by the numer[ou]s Pro Se motions to with draw counsel fil[e]d on 2/26/07, 4/13/07, 6/06/07 and 6/15/07.

9

7.  error the original audio tapes of the time statu[t]es, hearing to sup[p]ress, hearing concerning jury trial and the sentencing hearing will show complete Bias of the court.  That destroyed the rights of the Defendant to have and get a fair hearing or trial.

8.  error the court denied the Defendant the right to due process, and his privileges.

9.  error the Defendant[']s atto[r]neys Eric Allen fail[e]d to put material and alibi witnesses for re[a]son on Appeal, refused to get affidavits or take depositions and fail[e]d to get other Cru[ci]al evidence, or to even place evidence in the Defendant[']s case file.

10.  error all five attorneys [k]new Lori Rankin Appeals counsel denied the Defendant his rights for witnesses['] testimon[ie]s and other evidence in favor to the Defendant.

11.  error the court was not going to sequest[e]r the jury, they were going to p[ermit] the jury [to] ro[am] even wh[ile] deliberating the Defendant[']s fate, and going to permit the jury to be exposed to the prosecutor wh[ile] th[e]y were deliberating the Defendant[']s fate and was told that by so much by judge Crush him self in a court hearing.

**Ground Five (Eighth Amendment Violation):**  "Excessive bail shall not be required; Nor excessive fines imposed; Nor cruel and unusual punishment inflicted."

> 1.  The Defendant has the right to be free of cruel and unusual punishment and coercion.
> 2.  The police officers are prohibited the use of cruel and unusual punishments to gain confessions by the u[s]e of force and coercion.

**Supporting Facts:**

1. error the Defendant was coercion at the State Patrol S[t]ation by Wooten, Slusher and Smith by refus[]ing the Defenda[n]t the right to leave.  He was not under arrest, used the Defendan[']s handicapped child to get a coercion confession.  Then by coercion the Defendant to write what Slusher told him, putting words in the Defendant['s] mouth when Defendant was[n't] even t[a]lking, then telling the Defendant to sign the coercion confession.

2. error was when the court used coercion by den[y]ing the Defendant his right for a fast and speedy trial, by not letting the Defendant have fair hearings or d[u]e process, and by den[y]ing the Defendant effective assistance of Defen[s]e []trial counsels and Appe[l]la[te] counsel, den[y]ing the Defendant of material and alibi witnesses as well as other evidence in his favor.

3. error was when the officers and Smith that used cruel an[d] unusual punishment stop[p]ing the Defendant from leaving and putting Defendant[']s child in danger, by hindering evidence and material and alibi witnesses, by not doing [a]ny investigation at all.

4. error was the courts and Defendant[']s Attor[n]eys us[e]d cruel and unus[ua]l

10

punishment, by den[y]ing the Defendant his [C]ivil and Constitutional rights that made it [im]possible for the Defendant to get a fair trial with out his . . . witnesses and evidence to prove alibi and his innocen[ce] by keeping the Defendant [incarce]rated for five-hundred and sixty-nine days without signing a time waiver.
5.  error was the officers, Smith, Defendant[']s attor[n]eys, prosecutor and the judge used these means as C[rue]l and unus[u]al punishment and Coercion to get a Plea Deal out of the Defendant that denied the Defendant his rights as a Citizen of the State of Ohio and of the United States.

**Ground Six (Ninth Amendment Violation):** The enumeration [i.e. Executi[v]e-Legislative-Judicial-Br[a]nches] in the Constitution of certain rights shall not be constr[u]ed to deny or disp[ar]age others retained by the people.
    1.  The enumeration cannot ex[e]rcise any jurisdi[c]tion not ascertained prior to the commenc[e]ment of the action and cannot constr[u]e the Statu[t]es to deny or dis[par]age the right of the Defendant.
    2.  The Defendant has the right to defend against the enumeration of the Grand Jury Hearings.

**Supporting Facts:**
1.  error the court denied the Defendant hi[s] right to a fast and spee[d]y trial.  The right of assistance of legal representation.  The right to have Material and Alibi Witnesses as well as other Cru[cial] evidence[,] den[y]ing him the right to see evidence that was used against him.
2.  error the court fail[e]d the Defendant the right for assistance of Defen[s]e counsel to p[ro]duce Material and Alibi Witnesses and Cru[cial] evidence in his favor to the Grand Jury for hearings and indi[c]tment.

**Ground Seven (Tenth Amendment Violation):**  The pow[er]s not delegated to the United States by the Constitution, No[r] prohibited by it to the states[,] are rese[r]ved to the States respectively; or to the people.
    1.  The enumeration powers not delegated by the Constitution or States, cannot deny or disparage the rights of the Defendant.
    2.  The Defendant is protected from application of Statu[t]es when misapplied.
    3.  The Defendant is protected from the trial judge bias during proceedings.

**Supporting Facts:**
1.  error the courts abused [their] powers when the Defendant c[o]nfronted them of the time statu[t]e at the hearing held on 2/26/07 and 4/04/07 and at sentencing.
2.  error was when the court abused it[]s power by not [acc]epting the Defendant[']s req[u]est for dismiss[]al after five-h[u]nd[re]d and sixty-nine days of incar[cer]ation, and that more th[a]n two-hundred and sixty fast and speedy

trial days had elapsed.  Arrested March 13/06 held in jail on pending charge through his No Contest Plea on 10/03/07 on pending charge.

3.  error Judge Crush, trial judge help prosecutors by showing complete Bias, by telling the Defendant and by showing the Defendant that he was not going to get a fair hearing or trial or get a[n] attorney to legally represent him, by motions Defendant fi[le]d Pro Se to have attorney withdraw for not getting Material and Alibi Witnesses, and other . . . Cru[cial] evidence, by not taking depositions or getting affidavits to secure testimonies of the Material and Alibi Witnesses for his defen[s]e at trial.

**Ground Eight (Thirteenth Amendment Violation):**  Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall been as a co[n]victed shall exist w[]ithin the United States, or any place subject to their jurisdiction.

> 1.  The Defendant has the right to be free of coercion and not held in slavery nor involuntary servitude by coercion.

**Supporting Facts:**

1.  error Slusher, Wooten and Smith stop the Defendant from being free, when he was not under arrest.  When Slusher jump up and block the door so the Defendant could not exit.  Then p[roceeded] to coerce the Defendant and made a d[e]al that the Defendant could check on his handicap[ped] son if he did confess.  Then pro[ceeded] to coercion a confession.  Slusher telling the Def[e]ndant what to write and then telling him to sign the confession. . . .

2.  error the courts used time and coercion on the Defendant to take a Plea, knowing[] he had Material and Alibi Witnesses and other Cru[cial] evidence that would make the affidavit against him (FRAUD[U]L[E]NT):Made s[]ure [no] attorneys got [a]ny evidence or Witness testimonies in the Defendant[']s favor. The courts and Defendant[']s attorney to look good on pap[]er filed . . . for Alibi but on the su[b]poenas used bogus addresses for the Material and Alibi Witnesses and h[u]ndred other Cru[cial] evidence.  Refused to give back evidence or to place that evidence in his case file.  The courts used time, and authority to keep the defendant incar[c]erated and used these means to get the Defendant to take a Plea Deal.

**Ground Nine (Fourteenth Amendment Violation):**  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or deprive any person of life, liberty, or property, without due process of law; Nor deny to any person within its jurisdiction the equal protection of the law.

> 1.  The Defendant has the right to the due process of the law being substantive or proce[]dural.
>
> 2.  The State pr[o]secutor violated due process of the law, and

12

equal protection of the laws by coming and going from the
chambers of the jury while deliberations are being conducted.
3.  The Defendant has the right to defend against the evidence at
the Grand Jury hearings.

**Supporting Facts:**
1.  error at the preliminar[y] hearing, Defen[s]e attorney told the Defendant to
waive his rights, knowing[] he had Material and Alibi Witnesses.  She should
have p[re]sented at the . . . preliminar[y] hearing, that violated Due Process.  Then
all through the hearings and motion and at sentencing the courts and [their]
appointed attorneys Denied the Defendant Due Process.
2.  error the prosecutor failed in the Defendant[']s due proccess rights, by not
letting the Defendant or his Attorneys show witnesses and evidence to the Grand
Jury before indi[c]tment, and by letting all hearings be one sided for not letting
the Defendant have a Defen[s]e Attorney that would secure testimon[ie]s and
evidence in the Defendant[']s favor.  That violated the Defendant[']s due process
and to have equal protection of the laws and was told as much by Judge Cru[s]h
that the prosecutor was going to be in the deliberating room wh[ile] the Jury was
deliberating his fate.
3.  error the courts and Prosecutor Deprived the Defendant his right to present
evidence to the Grand Jury and a right to have witnesses and evidence to Dispute
the Prosecutor[']s witnesses and evidence in front of the Grand Jury before
indi[c]tment, and Denied him [h]is right to do so at trial.  With the Judge[']s help
and all five of the court appointed attorneys that deliber[ate]ly fail[e]d to secure
[a]ny evidence at all in the Defendant[']s favor.

(Doc. 2, pp. 6a, 8a, 9a, 11a-aa, 13a, 15a, 16a, 18a, 20a).

## II.  OPINION

### The Petition Should be Denied Because Petitioner Has Waived His Claims For Relief

In the petition, petitioner asserts numerous claims, often repeatedly and in a rambling

fashion.  He challenges, among other things, the prosecutor's, trial judge's and defense and

appellate counsels' conduct, as well as the denial of his motions to suppress his confession and

to dismiss the indictment on speedy trial grounds; he alleges the errors violated his constitutional

rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Thirteenth and Fourteenth

Amendments.  (Doc. 2).

In the return of writ filed in response to the petition, respondent argues that petitioner has waived all of his claims for relief.  (*See* Doc. 20).  Specifically, respondent contends that petitioner has waived any claim of a violation of his federal constitutional right to a speedy trial, because he raised the claim on direct appeal to the Ohio Court of Appeals as a state statutory violation only, which is not cognizable on federal habeas review.  (Doc. 20, Brief, pp. 15-20).  In addition, respondent asserts that petitioner has waived any other constitutional claim for relief that he may have tried to present to the state courts by way of his motion for new trial or successive petitions for post-conviction relief, because he failed to perfect an appeal from the trial court's rulings in those collateral review proceedings.   (Doc. 20, Brief, pp. 22-24). Respondent's arguments have merit.

As an initial matter, as respondent has argued in addressing petitioner's allegations that he was denied a speedy trial, petitioner is not entitled to relief to the extent he asserts claims of error under Ohio law.  The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Indeed, this Court must defer to and is bound by the state courts' determination that Ohio's speedy trial statute was not violated in this case.  *See, e.g., Caddy v. Ohio,* No. 3:07cv339, 2010 WL 2640073, at *3 (S.D. Ohio May 18, 2010) (Ovington, M.J.) (citing *Estelle*, 502 U.S. at 67-68; *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993), in turn quoting *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975)), *adopted*, 2010 WL 2629797 (S.D. Ohio June 29, 2010) (Black, J.).

14

Therefore, to the extent petitioner's arguments for relief are based solely on a violation of Ohio's speedy trial statute or other error under Ohio law, he does not present a cognizable federal constitutional claim subject to review in this proceeding. *See Norris v. Schotten,* 146 F.3d 314, 328-29 (6th Cir. 1998) (involving state-law claim under Ohio's speedy trial statute); *see also Bennett v. Warden, Lebanon Corr. Inst.,* __ F.Supp.2d __, No. 2009-cv-00622, 2011 WL 901529 (S.D. Ohio Mar. 15, 2011) (Bertelsman, J.; Wehrman, M.J.) (holding in part that the petitioner's allegations that Ohio's Speedy Trial Act was violated raised "issues of state-law only, which are not cognizable" on federal habeas review); *Caddy, supra*, 2010 WL 2640073, at *3 (same).

This Court does have jurisdiction to consider petitioner's claims to the extent he alleges a violation of his right to speedy trial guaranteed by the Sixth Amendment or other violations of his federal constitutional rights. However, as respondent also has argued in the return of writ, it appears that petitioner has waived any claim of federal constitutional dimension due to his procedural defaults in the state courts.

A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v.*

*Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

Moreover, it is well-settled that in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Fulcher,* 444 F.3d at 798; *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326.

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326. "While a petitioner

16

need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006) (internal citations and quotations omitted).  Generally, a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

In this case, as respondent has pointed out, petitioner committed a number of procedural defaults.  First, although he raised a speedy trial claim on direct appeal to both the Ohio Court of Appeals and Ohio Supreme Court, he only claimed on appeal to the Ohio Court of Appeals that "the State had failed to bring him to trial within the time limits" set forth in Ohio's speedy trial statute, Ohio Rev. Code §§ 2945.71 - 2945.73.   (*See* Doc. 20, Ex. 46).  In his appellate brief, petitioner relied solely on the state statute and Ohio cases interpreting and applying the statutory speedy trial requirements in arguing that his "statutory right to a speedy trial was violated." (Doc. 20, Ex. 46, pp. 3-5).  Because petitioner's speedy trial claim was thus predicated entirely on state law, the Ohio Court of Appeals was not alerted to any federal constitutional issue, and its decision overruling the assignment of error similarly was based entirely on state stautory requirements and considerations, as well as state court decisions interpreting and applying Ohio's speedy trial statute.  (*See* Doc. 20, Ex. 48).

Petitioner did generally allege on further appeal to the Ohio Supreme Court that he was denied a "fast and speedy trial" in violation of the federal Constitution's Fourth, Fifth, Sixth and Fourteenth Amendments.  (*See* Doc. 6, Ex. 49).  However, the Ohio Supreme Court lacks

jurisdiction to consider constitutional issues that were not raised to or considered by the

intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198

(Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08cv716, 2010 WL

3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, M.J.) (Report & Recommendation) (citing

*Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,*

2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,*

No. 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black,

M.J.) (and cases cited therein).  *Cf. Mayes v. Hudson,* No. 1:07cv315, 2010 WL 55963, at *9 &

n.1 (N.D. Ohio Jan. 4, 2010) (O'Malley, J.) (emphasizing that "[e]ven if [the] memorandum in

support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . .,

[the petitioner's] failure to raise that claim in the appellate court resulted in its default," because

it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the

claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar"

prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing

*Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

As federal courts in Ohio have consistently held in analogous cases, petitioner failed to

satisfy the fair presentation requirement, and thus procedurally defaulted any claim of a federal

speedy trial violation, when (1) he presented his claim to the Ohio Court of Appeals solely as a

violation of his state statutory speedy trial rights, and (2) the state appellate court only

considered the state-law claim raised by the petitioner in overruling the assignment of error.  *Cf.*

*Green v. Andrews,* No. 07cv2093, 2010 WL 1957482, at *7-9 (N.D. Ohio May 14, 2010)

(O'Malley, J.) (holding that because petitioner only alleged a violaton of his state statutory right

to a speedy trial on appeal to the Ohio Court of Appeals, he procedurally defaulted the federal speedy trial claim asserted in his discretionary appeal to the Ohio Supreme Court); *see also Bell v. Sheldon,* No. 1:09cv1884, 2010 WL 5342869, at *2 (N.D. Ohio Dec. 21, 2010); *Caddy, supra,* 2010 WL 2640073, at *3-4.

In addition, petitioner procedurally defaulted his remaining claims for relief to the extent he either (1) never presented them to the state courts for consideration; or (2) he raised them in his motion for a new tial or in his petitions for post-conviction relief, but failed to exhaust the claims through the requisite levels of appellate review to ensure that the Ohio Supreme Court was provided an opportunity to consider the federal constitutional issues.  Petitioner did not appeal the trial court's decision denying his motion for new trial.  Petitioner also did not appeal the trial court's dismissal on jurisdictional grounds of his post-conviction petition filed in November 2008.  Finally, although petitioner initiated an appeal to the Ohio Court of Appeals from the dismissal of his second post-conviction petition filed in May 2009, he failed to comply with the court's directives, which resulted in the dismissal of the appeal for lack of prosecution; moreover, petitioner did not pursue any appeal to the Ohio Supreme Court to challenge the appellate court's ruling in that matter.

By thus failing to provide the state's highest court with any opportunity to correct the errors of constitutional dimension that are alleged in the instant petition, petitioner has waived all cognizable claims for relief unless he demonstrates cause for his defaults in the state courts and actual prejudice as a result of the alleged errors, or that failure to consider the constitutional claims will result in a "fundamental miscarriage of justice."  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S.

107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Petitioner has not demonstrated that failure to consider his constitutional claims for relief will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent."  *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  Nor has petitioner established cause sufficient to excuse his procedural defaults in the state courts.  Although he conclusorily asserts in his reply brief that he has "handicaps" and that his last trial attorney caused him to file untimely post-conviction motions with the trial court (*see* Doc. 21), these allegations are inadequate to establish cause or to explain why he failed to perfect appeals from the trial court's rulings in the post-conviction matters.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief in this case.  To the extent he exhausted a claim of error under Ohio's speedy trial statute in the state courts, he alleges an issue of state-law only, which is not cognizable in this federal habeas proceeding.  Moreover, to the extent that petitioner claims that he was denied his federal constitutional right to a speedy trial and that other constitutional violations occurred during the trial and appeal proceedings, he procedurally defaulted those claims in the state courts.  Petitioner has not demonstrated cause for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered herein.  Therefore, any cognizable constitutional ground for relief is procedurally barred from review by this Court.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to any of petitioner's claims, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[4]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[4]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the petition.  *See Slack,* 529 U.S. at 484.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

AARON D. YOUNKER,                             Case No. 1:10-cv-875
     Petitioner,

                                      Dlott, J.
     vs                             Bowman, M.J.

WARDEN, CHILLICOTHE CORRECTIONAL
INSTITUTION,
     Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).